[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

————

No. 07-15329

————

D.C. Docket No. 07-01798-CV-ACC-KRS

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
November 15, 2007
THOMAS K. KAHN
CLERK

MARK DEAN SCHWAB,

Plaintiff-Appellee,

versus

SECRETARY, DEPARTMENT OF CORRECTIONS,
OTHER UNKNOWN EMPLOYEES AND AGENTS,
Florida Department of Corrections,

Defendants-Appellants.

------------------------
Appeal from the United States District Court
for the Middle District of Florida
--------------------------

**(November 15, 2007)**

Before DUBINA, CARNES, and HULL, Circuit Judges.

PER CURIAM:

We have before us a motion filed by the State of Florida, through the

Secretary of its Department of Corrections, asking that we vacate a stay of

execution the district court entered early yesterday afternoon on behalf of Mark

Dean Schwab. That court entered the stay in response to Schwab's emergency

motion for one in connection with his last-minute filing of a 42 U.S.C. § 1983

lawsuit challenging the manner in which the state's lethal injection procedures are

designed and carried out.[1]  The district court made it clear that the Supreme

Court's grant of certiorari in Baze v. Rees, 128 S. Ct. 34, amended, 128 S. Ct. 372

(2007), was the only reason it entered the stay. Schwab v. McDonough, No.

6:07cv1798, at 5 (M.D. Fla. Nov. 14, 2007) ("Simply put, the Court would not

issue this stay absent the Supreme Court's grant of certiorari in Baze.").

The district court's action in granting the stay is contrary to the unequivocal

law of this circuit that because grants of certiorari do not themselves change the

law, they must not be used by courts of this circuit as a basis for granting a stay of

execution that would otherwise be denied. Rutherford v. Crosby, 438 F.3d 1087,

1093 (11th Cir.) ("At least four times over the years we have been asked to issue a

stay of execution based on a grant of certiorari in another case raising an issue

identical to one that the movant was raising in the case before us, an issue

foreclosed by existing circuit precedent that might be overruled by the Supreme

---

[1] On July 18, 2007, the Governor of Florida signed an execution warrant setting November 15, 2007 as the execution date. Schwab did not file his § 1983 lawsuit until 4:58 p.m. on November 13, 2007.

Court. All four times we have declined to do so because the grant of certiorari does not change circuit precedent, and it makes more sense to let the Court that is going to be deciding the issue determine whether there should be a stay in another case raising it."), stay granted, 546 U.S. 1159, 126 S. Ct. 1191, opinion vacated sub nom., Rutherford v. McDonough, 126 S. Ct. 2915, reinstated in part, 466 F.3d 970 (11th Cir.), cert. denied, 127 S. Ct. 465 (2006); Robinson v. Crosby, 358 F.3d 1281, 1284 (11th Cir.) (declining to grant a stay pending the Supreme Court's decision in another case because "the grant of certiorari alone is not enough to change the law of this circuit or to justify this Court in granting a stay of execution on the possibility that the Supreme Court may overturn circuit law"), abrogated on other grounds by Hill v. McDonough, 126 S. Ct. 2096 (2006); Thomas v. Wainwright, 788 F.2d 684, 689 (11th Cir. 1986) (denying a stay even though certiorari had been granted in another case on the same issue, because "[t]o date, the law in this Circuit, which has not been modified by Supreme Court decision, mandates a denial of relief to petitioner on this issue," and "any implications to be drawn [from the grant of certiorari in the other case] may be discerned by application to the Supreme Court" (internal marks and citations omitted) (quoting Jones v. Smith, 786 F.2d 1011, 1012 (11th Cir. 1986)); see also Ritter v. Thigpen, 828 F.2d 662, 665–66 (11th Cir. 1985) ("A grant of certiorari does not constitute

3

new law."); Bowden v. Kemp, 774 F.2d 1494, 1495 (11th Cir. 1985) (holding that a grant of certiorari is not authority to the contrary of binding circuit precedent).[2]

The district court's belief that "the fact that the Supreme Court has elected to grant review in [the Baze] case suggests that [Schwab] faces the prospect of a significant possibility of success on the merits of his claims," Schwab, No. 6:07cv1798, at 6, is simply wrong. The grant of certiorari on an issue does not suggest a view on the merits. We don't know how the Supreme Court is going to decide the issues on which it has granted review in the Baze case, and the Supreme Court itself probably does not know given the fact that briefing has not even been completed in that case.

Even if we were permitted to sweep aside binding circuit law based on our speculation about what the Supreme Court may decide in another case and our conjecture about how that decision might affect the case in front of us, we have no reason to believe that the Baze decision will enhance Schwab's prospects for relief in this case. In his state court proceeding raising the same issues as he raises here,

---

[2] The recent decision in Siebert v. Allen, ___ F.3d ___, 2007 WL 3244633 (11th Cir. Nov. 5, 2007), does not suggest to the contrary. In that case we reversed the denial of a preliminary injunction on that inmate's as applied challenge to Alabama's lethal injection procedures based on facts that were unique to him, but not because certiorari had been granted in the Baze case. Id. at *2–3. Indeed, we affirmed on grounds of laches the denial of a preliminary injunction insofar as Seibert's general challenge to Alabama's three-drug protocol was concerned. Id. at *2 n.3.

Schwab relied entirely on the evidence introduced in the related <u>Lightbourne v. McCollum</u>, ___ So. 2d ___, 2007 WL 3196533 (Fla. Nov. 1, 2007), case. <u>Schwab v. State</u>, ___ So. 2d ___, 2007 WL 3196523, at *2 (Fla. Nov. 1, 2007) (noting that the parties stipulated that the <u>Lightbourne</u> hearing testimony may be judicially noticed in the case, and "this Court considered all of the evidence presented in <u>Lightbourne</u> when reviewing the Eighth Amendment challenge presented here"); <u>id.</u> at *4 (noting that "Schwab does not assert that he would have presented any additional testimony or other evidence regarding pancuronium bromide than that presented in <u>Lightbourne</u>," that "Schwab does not allege that he has additional experts who would give different views as to the three-drug protocol," and that "Schwab relies on no new evidence as to the chemicals employed since this Court's previous rulings rejected this very challenge"). Schwab has not suggested in this § 1983 proceeding that he has any additional evidence, and he has not requested an evidentiary hearing. The merits of his Eighth Amendment claim rises or falls on the basis of the evidence submitted in the <u>Lightbourne</u> case.

The first issue the Supreme Court granted certiorari to decide in the <u>Baze</u> case is whether the proper standard for judging this type of Eighth Amendment claim was substantial risk of wanton infliction of pain, as the Kentucky Supreme Court held, or unnecessary risk of pain, which is the standard Baze is urging.

5

Baze, 128 S. Ct. at 372; Petition for Writ of Certiorari at ii, Baze v. Rees, No. 07-5439 (U.S. Jul. 11, 2007). After carefully considering the evidence on which Schwab bases his claim—the Lightbourne evidence—the Florida Supreme Court held that regardless of which standard the Supreme Court chooses in the Baze case, the result will be the same insofar as the Florida procedures, protocols, and drugs are concerned. Lightbourne, 2007 WL 3196533, at *23. The evidence that Lightbourne and Schwab rely on does not show that those procedures, protocols, and drugs pose an unnecessary risk of pain. Id.

The second issue the Supreme Court granted certiorari to decide in the Baze case is whether a means for carrying out an execution violates the Eighth Amendment if there are readily available alternatives that pose less risk of pain and suffering. Baze, 128 S. Ct. at 372; Petition for Writ of Certiorari at ii, Baze, No. 07-5439. The third issue is whether the continued use of the three drugs—sodium thiopental, pancuronium bromide, and potassium chloride—individually or together, violate the Eighth Amendment. Baze, 128 S. Ct. at 372; Petition for Writ of Certiorari at iii, Baze, No. 07-5439. It appears that the decision of those issues also will not affect the merits of Schwab's claim in view of the evidence that he relies on. See Schwab, 2007 WL 3196523, at *4 ("[T]he toxicology and anesthesiology experts who testified in Lightbourne agreed

6

that if the sodium pentothal is successfully administered as specified in the protocol, the inmate will not be aware of any of the effects of the pancuronium bromide and thus will not suffer any pain. Moreover, the protocol has been amended since Diaz's execution so that the warden will ensure that the inmate is unconscious before the pancuronium bromide and the potassium chloride are injected. Schwab does not allege that he has additional experts who would give different views as to the three-drug protocol."); accord Lightbourne, 2007 WL 3196533, at *23 ("As stressed repeatedly above, it is undisputed that there is no risk of pain if the inmate is unconscious before the second and third drugs are administered. After Diaz's execution, the DOC added additional safeguards into the protocol to ensure the inmate will be unconscious before the execution proceeds. In light of these additional safeguards and the amount of sodium pentothal used, which is a lethal dose in itself, we conclude that Lightbourne has not shown a substantial, foreseeable or unnecessary risk of pain . . . .") (footnote omitted).

There is another reason that the decision in Baze is unlikely to increase Schwab's likelihood for success. Florida's statute providing lethal injection as an alternative to electrocution was enacted more than seven and a half years ago. Schwab's petition for a federal writ of habeas corpus was denied two years ago,

7

and we affirmed that denial seventeen months ago. Four months ago the Governor signed a warrant setting Schwab's execution date for November 15, 2007. Yet Schwab did not file his § 1983 petition challenging Florida's lethal injection procedures until 4:58 p.m. on November 13, 2007, just two days before his scheduled execution.

As the district court noted: "Turning to the subject of Plaintiff's diligence, certainly an argument can be made that he delayed too long in bringing this suit. Ordinarily, that consideration alone might warrant denial of a stay." Schwab, No. 6:07cv1798, at 6. That observation understates the law of this circuit concerning the extent to which laches-like considerations may bar relief in this type of case. See Williams v. Allen, 496 F.3d 1210, 1215 (11th Cir.), cert. dismissed, 128 S. Ct. 370 (2007); Grayson v. Allen, 491 F.3d 1318, 1322 (11th Cir.), cert. denied, 128 S. Ct. 6 (2007); Jones v. Allen, 485 F.3d 635, 639–40 (11th Cir.), cert. denied, 127 S. Ct. 2160 (2007); Rutherford, 466 F.3d at 973–74; see also Hill, 126 S. Ct. at 2104 ("A court considering a stay must also apply 'a strong equitable presumption against the grant of a stay where a claim could have been brought at such a time as to allow consideration of the merits without requiring a stay.'" (citation omitted)); Nelson v. Campbell, 541 U.S. 637, 649–50, 124 S. Ct. 2117, 2126 (2004) ("[B]efore granting a stay, a district court must consider not only the likelihood of

8

success on the merits and the relative harms to the parties, but also the extent to which the inmate has delayed unnecessarily in bringing his claim."). Under our precedent, Schwab's delay in bringing his § 1983 lawsuit mandates denial of a stay on laches grounds. Laches is not an issue in the Baze case.

The district court pointed out two cases involving lethal injection challenges in which the Supreme Court has granted stays of execution since its grant of certiorari in the Baze case. Berry v. Epps, No. 07-7348, 2007 WL 3156229, at *1 (U.S. Oct. 30, 2007); Emmett v. Johnson, No. 07A304, 2007 WL 3018923, at *1 (U.S. Oct. 17, 2007). Orders granting stays are not precedential decisions. Like most other judicial orders of one or two sentences, they do not extend beyond the case in which they are entered. They don't have to. The Supreme Court knows why it granted stays in the Berry and Emmett cases, and it is fully capable of granting one in this case if it chooses to do so. While we labor to follow high court decisions faithfully, it is not our role to preempt Supreme Court action on motions requesting stays pending decisions that Court will make in the future. As we explained in the Rutherford case, "the Supreme Court is in a better position to decide whether it wants a stay of execution issued in this case than we are, and it has time to make a decision about a stay," because all of the papers we have before us have been lodged contemporaneously with that Court. Rutherford, 438 F.3d at

9

1093.

The Supreme Court instructed us in <u>Nelson</u> that even in a capital case a stay is an equitable remedy which must take into account the State's strong interest in proceeding with its judgment, that consideration must be given not only to the likelihood of success on the merits but also to the extent to which the inmate has delayed unnecessarily in bringing his claim. 541 U.S. at 649–50, 124 S. Ct. at 2126. And "there is a strong equitable presumption against the grant of a stay where a claim could have been brought at such a time as to allow consideration of the merits without requiring entry of a stay." <u>Id</u>. at 650, 124 S. Ct. at 2126. The Supreme Court reiterated that instruction in <u>Hill</u>, reminding us that a stay of execution "is not available as a matter of right, and equity must be sensitive to the State's strong interest in enforcing its criminal judgments without undue interference from the federal courts." 126 S. Ct. at 2104; <u>accord</u> <u>Thompson v. Wainwright</u>, 714 F.2d 1495, 1506 (11th Cir. 1983) ("Each delay, for its span, is a commutation of a death sentence to one of imprisonment.").

In this case, for the reasons the Florida Supreme Court explained in the <u>Lightbourne</u> case, Schwab does not have a substantial likelihood of success on the merits of his claim. The interest of the State of Florida and the victim's family in seeing that Schwab's sentence is carried out without further delay is substantial,

10

and he did delay unnecessarily in bringing his claim, which is why this order is being issued on the morning of the day of the scheduled execution.

The district court's order staying the execution is **VACATED.**